## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## *MACON*      DIVISION

FILED
U S DISTRICT COURT
MIDDLE GEORGIA

## QUESTIONNAIRE FOR PRISONERS PROCEEDING
## PRO SE UNDER 42 U.S.C. §1983

08 MAY -6  AM 9: 03

DEPUTY CLERK

*GLAZE, HERBERT EARL*
*EF# 254596 / 0.0.C# 564668*

(GIVE FULL NAME AND PRISON NUMBER OF EACH PLAINTIFF):

Plaintiff(s)

VS.                                CIVIL ACTION NO.   5:03-cv-0137-1

*JAMES DOCTOR, Director of Facilities*
*JOHN DOE, Assistant to the Commissioner*
*THALRONE WILLIAM, Warden*
*DEPUTY WARDEN, LAWRENCE*
(NAME OF EACH DEFENDANT)

*DEMAND FOR TRIAL BY JURY*

Defendant(s)

*(See Attachment pg 1)*

## I.  GENERAL INFORMATION

1.  Your full name <u>and</u> prison number *Herbert Earl Glaze EF# 254596/DOC# 564668*

2.  Name and location of prison where you are <u>now</u> confined *Augusta State Medical Prison, 3001 Gordon Hwy, Grovetown, Ga.*

3.  Sentence you are now serving (how long?) *Life imprisonment*

   (a) What were you convicted of? *Felony Murder*

   (b) Name and location of court which imposed sentence *Fulton County Superior Court*

   (c) When was sentence imposed? *Febuary 14, 1990*

   (d) Did you appeal your sentence and/or conviction?  ☑ Yes   ☐ No

   (e) What was the result of your appeal? *Conviction was affirmed.*

   (f) Approximate date your sentence will be completed *Unknown*

①

## II.  PREVIOUS LAWSUITS

4.  Other than the appeal of your conviction or sentence, have you ever submitted a lawsuit for filing in <u>any</u> federal or state court dealing with the <u>SAME FACTS</u> involved in this lawsuit or otherwise related to your imprisonment?   ☐ Yes   ☑ No

5.  If your answer to question 4. is "Yes," list that lawsuit below, giving the following information: (IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

   (a) Parties to the previous lawsuit:

   Plaintiff(s): _____

   Defendant(s): _____

   (b) Name of Court: _____

   (c) Docket Number: _____   When did you file this lawsuit? _____

   (d) Name of judge assigned to case: _____

   (e) Is this case still pending   ☐ Yes   ☐ No

   (f) If your answer to (e) is "No," when was it disposed of and what were the results?
   (DID YOU WIN?  WAS THE CASE DISMISSED?  DID YOU APPEAL?)
   _____

### III.  PRESENT CONFINEMENT

6.  Where are you <u>now</u> confined? *Augusta State Medical Prison*

   (a) How long have you been at this institution? *From June 19, 2001 until present*

   (b) Does this institution have a grievance procedure?   ☑ Yes   ☐ No

   (c) If your answer to question 6(b) is "Yes," answer the following:

      (1) Did you present your complaint(s) herein to the institution as a grievance?
      ☐ Yes   ☑ No

      (2) What was the result? *The subject of the complaint herein involves the disciplinary process conducted at Rivers State Prison*

   (d) What, if anything, have you done to bring your complaint(s) to the attention of prison officials?  Give dates and places and the names of persons talked to.

   *The disciplinary report, conviction and sentence was appealed to the Warden at Rivers State Prison and to the Office of the Commissioner June 14, 2001 and July 6, 2001 respectively.*

7.  In what other institutions have you been confined?  Give dates of entry and exit.

Jackson State Prison, entry Feburary 28, 1990, exited May 3, 1990
Dodge State Prison, entry May 4, 1990, exited December 17, 1992
Telfair State Prison, entry December 18, 1992, exited June 18, 1996
Rivers State Prison, entry June 20, 1996, exited June 18, 2001
Augusta State Medical Prison, entry June 19, 2001 until present

## IV.  PARTIES TO THIS LAWSUIT

8.  List the name and address of each plaintiff in this lawsuit.

Herbert Earl Glaze, Augusta State Medical Prison, 3001 Gordon Hwy.,
Grovetown, Ga. and was incarcerated at Rivers State Prison ("Rivers")
during the events described in this complaint.

9.  List the full name, the official position, and the place of employment of each defendant
in this lawsuit.  (ATTACH ADDITIONAL PAGES IF NECESSARY)  (See, Attachments ps 1-3)

James Doctor, Floyd Veterans Memorial Building, East Tower, Room 652,
2 Martin Luther King Jr. S.E., Atlanta, Ga, is the Director of Facilities
for the Department of Corrections and is responsible for the supervision
and implementation of procedures governing operations and all Correctional
staff at Rivers. He is sued in his individual and official capacities.

## V.  STATEMENT OF CLAIM

10.  In the space hereafter provided, and on separate sheets of paper, if necessary, set forth
your claims and contentions against the defendant(s) you have named herein.  Tell the court
**WHAT** you contend happened to you, **WHEN** the incident(s) you complain about occurred,
**WHERE** the incident(s) took place, **HOW** your constitutional rights were violated, and
**WHO** violated them?  Describe how each defendant was involved, including the names of
other persons who were also involved.  If you have more than one claim, number and set
forth each claim SEPARATELY.

    Do not give any legal argument or cite any cases or statutes at this time;  if such is
needed at a later time, the court will advise you of this and will afford you sufficient time
to make such arguments.   KEEP IN MIND THAT RULE 8 OF THE *FEDERAL RULES
OF CIVIL PROCEDURE* REQUIRES THAT PLEADINGS BE SIMPLE, CONCISE, AND
DIRECT!  If the court needs additional information from you, you will be notified.

## STATEMENT OF CLAIM (CONTINUED)

Where did the incident you are complaining about occur?   That is, at what institution or institutions? _Rivers State Prison_

When do you allege this incident took place? _between May 22, 2001 and August 27, 2001_

What happened? _1. At approximately 11:45 am on May 22, 2001 defendants Lawrence, Simmons and Densley entered Dorm One in the North Building._

_2. Defendant Densley remained at the sallyport door with the John Doe Officer on Dorm One._

_3. Defendants Lawrence and Simmons proceeded into Dorm One and began instructing inmates to come to the area known as skidrow._

_4. Defendant Lawrence remained on skidrow while defendant Simmons proceeded to the rear of Dorm One and began moving those inmates in the rear of the dorm onto skidrow._

_5. During this time there was only four correctional officers on Dorm One, Captain Densley, Captain Simmons, John Doe Dorm Officer and Deputy Warden Lawrence._

_6. Defendants Lawrence and Simmons assumed positions on either side of the doorway which opens onto skidrow from the hallway leading from the sallyport door._

_7. Defendants Lawrence, Simmons, nor Densley assigned any correctional officers to positions on skidrow in order to monitor the activities of the inmates gathered on skidrow._

_8. Defendant Densley either opened or caused to be opened the sallyport door and between 8 or 9 additional correctional officers entered Dorm One._

_9. All of these correctional officers proceeded directly into the shower/restroom area of Dorm One._

_10. Plaintiff only recognized Officer Day among the correctional officers who were in the shower/restroom area._

_11. Defendants Lawrence and Simmons began selecting and instructing inmates on skidrow to proceed into the shower/restroom area._

_12. Plaintiff was selected in the first group of inmates to be sent into the shower/restroom area._

_13. Plaintiff was instructed by Officer Day to strip._

_14. Officer Day found no contraband either on plaintiff's person or clothes._

(See, Attachments pg. 4-15)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON                DIVISION
QUESTIONAIRE  FOR  PRISONER'S PROCEEDINGS
PRO  SE  UNDER 42 U.S.C. §1983

GLAZE, HERBERT EARL,
EF#254596/D.O.C#564668
            Plaintiff

        VS.                        | CIVIL ACTION NO.:

CAPTAIN, SIMMONS
CAPTAIN, DENISLEY
CAPTAIN, SPIRES
EDDIE WILLIAM, sergeant
OFFICER, WILSON
SABRINA SAPP, Officer
COUNSELOR, DAVIS
COUNSELOR, BOONE          | DEMAND FOR TRIAL BY JURY
        Defendants

IV. PARTIES TO THIS LAWSUIT (continued)

9. John Doe, East Tower, 2 Martin Luther King Dr., S.E., Atlanta, Ga.,
is the Executive Assistant to the Commissioner and is responsible for
reviewing the administrative appeals of disciplinary charges filed
by inmates at Rivers. He is sued in his individual and official
capacities.

Tholiane Williams, Rivers State Prison, P.C. Box 1500, Hardwick, Ga.,
is the Warden at Rivers and is responsible for reviewing all adminis-
Trative appeals at Rivers. He is sued in his individual and official capacities.

1.

IV. PARTIES TO THIS LAWSUIT (continued)

9. List the full name, the official position, and the place of employment of each defendant in this lawsuit.

Defendant Lawrence, is the Deputy Warden of Security employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. He is responsible for all matters of security. He is sued in his individual and official capacities.

Defendant Simmons, is a Correctional Captain, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. He is responsible for supervision of Officers at Rivers. He is sued in his individual capacity.

Defendant Densley, is a Correctional Captain, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. He is responsible for supervision of Officers at Rivers. He is sued in his individual capacity.

Defendant Spires, is a Correctional Captain, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. He is responsible for conducting disciplinary hearings for prisoners accused of breaking prison rules. He is sued in his individual capacity.

Eddie Williams, is a Correctional Sergeant, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga. He is responsible for supervision of Officers at Rivers. He is sued in his individual capacity.

Defendant Wilson, is a Correctional Officer, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. She is responsible for the investigation of disciplinary reports. She is sued in her individual capacity.

2.

IV. PARTIES TO THIS LAWSUIT (continued)

9. List the full name, the official position, and place of employment of each defendant in this lawsuit.

Sabrina Sapp, is a correctional officer, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga. She is responsible for maintaining security of inmates at Rivers. She is sued in her individual capacity.

Defendant Davis, is a Correctional Counselor, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. She is responsible for ensuring that all due process aspects of the disciplinary procedures are followed, assisting the inmate in assembling material for the disciplinary hearing and organizing and presenting the case. She is sued in her individual capacity.

Defendant Boone, is a Correctional Counselor, employed at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., whose first name is presently unknown to plaintiff. She is responsible for ensuring that all due process aspects of the disciplinary procedures are followed, assisting the inmate in assembling material for the disciplinary hearing and organizing and presenting the case. She is sued in her individual capacity.

Plaintiff respectfully reserves the right to amend any names or addresses of defendants which are presently unknown as discovery reveals said names or addresses.

V. STATEMENT OF CLAIM (continued)

15. Plaintiff was instructed to dress and go across the hall into a eight-men cell.

16. As plaintiff proceeded into the eight-man cell he observed that defendant Lawrence and defendant Simmons had moved from the Skidrow area into the hallway leading to the sallyport door.

17. Throughout the strip-search of inmates on Dorm One there were no Correctional officers assigned to monitor the activities of these inmates remaining on Skidrow.

18. The strip-search was completed at approximately 12:55 pm and inmates on Dorm One were instructed to proceed to the yard.

19. As plaintiff proceeded to the yard he observed several K-9 units and their John Doe Officers entering Dorm One at approximately 1:00pm.

20. Plaintiff observed defendant Sapp on the yard with the other John Doe Officers assigned to monitor inmates from the North Building during the K-9 search.

21. Plaintiff and the inmates from the six(6) dorms in the North Building were instructed to proceed into the tunnel when it began to rain.

22. Plaintiff observed that defendant Sapp remained with the Officers assigned to monitor inmates from the North Building during the movement into the tunnel.

23. Defendant Sapp remained in the tunnel until she was relieved.

24. At approximately 3:45 pm on May 22, 2001, the K-9 search was completed on all six(6) dorms in the North Building.

25. Plaintiff and the other inmates were inmates to return to their dorms.

4.

V. STATEMENT    OF    CLAIM (Continued)

26. Plaintiff returned to Dorm One and discovered that his lockerbox and his bunkmate's, inmate Trevis Johnson EF#427948, lockerbox were open and empty.

27. C.E.R.T. Officers Pinkston and Slocum entered Dorm One and asked the John Doe Dorm Officer where plaintiff was located.

28. Plaintiff was located, handcuffed, and escorted to isolation/segregation (iso/ses) where he was required to submit to a drug test which was negative.

29. Inmate Johnson also in iso/seg had taken a drug test which was positive.

30. Plaintiff was placed in segregation and deprived of all personal property.

31. Plaintiff asked the John Doe Segregation Officer why he was being deprived of all personal property and was informed that it was a policy of Rivers.

32. Plaintiff remained in segregation for 10 days in conditions identical to confinement in disciplinary isolation.

33. Plaintiff was served a disciplinary report, Code#E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, at approximately 4:33 p.m on May 22, 2001, for possession of drugs.

34. Defendant Sapp is listed as the Reporting Official at 3:07 p.m.

35. Defendant E. Williams is listed as the supervisor who verified that the disciplinary report was accurate and complete.

36. At approximately 9:00 p.m. on May 22, 2001, John Doe Segregation Officer provided plaintiff with a witness statement form.

37. Plaintiff completed the witness statement form and returned it to the John Doe Segregation Officer.

38. At approximately 10:15 am on May 24, 2001, defendant Wilson, who is the Disciplinary Report Investigator, approached plaintiff's cell in iso/ses.

39. Defendant Wilson instructed plaintiff to complete another witness statement form and asked whether he wanted a Staff Advocate.

5.

## V. STATEMENT OF CLAIM (continued)

40. Plaintiff completed the second witness statement form provided and informed defendant Wilson that he wanted a Staff Advocate.

41. Plaintiff informed defendant Wilson that he did not know the names of the officers who conducted the strip-search of inmates on Dorm One other than Officer Day.

42. Plaintiff requested defendant Wilson to include as witnesses those officers who had conducted the strip-search of inmates on Dorm One.

43. Defendant Wilson informed plaintiff that he was required to identify any witnesses wanted before she would interview them.

44. Plaintiff requested defendant Wilson to examine the Staff eyewitness witness statements in order to obtain the names of the officers.

45. Plaintiff informed defendant Wilson that these officers statements would be critical in order to establish that there had been inadequate security procedures exercised on S.K.draw during the strip-search.

46. Defendant Wilson informed plaintiff that she had no way of identifying the officers who had conducted the strip-search of inmates on Dorm One.

47. Plaintiff advised defendant Wilson that the time of offense or more importantly the time the drug was stated to have been found was incorrect.

48. Plaintiff informed defendant Wilson that the K-9 unit entered Dorm One at approximately 1:00 p.m and therefore the drugs must have been found well before the 3:07 pm time on the Disciplinary Report.

49. Plaintiff advised defendant Wilson that defendant Sapp could not have found the drugs because she was on the yard during the time the K-9 unit searched Dorm One.

50. Plaintiff informed defendant Wilson that the Disciplinary Report factual statement was invalid because it lacked specific details related to where exactly the drugs were found.

6.

V. STATEMENT OF CLAIM (continued)

51. Plaintiff then requested that defendant Wilson place defendant Sapp down as a witness.

52. Defendant Wilson responded that defendant Sapp did not have to possess personal Knowledge of the facts to write the Disciplinary Report. Defendant Wilson then exited iso/seg.

53. At approximately 9:30am on May 25,2001, a segregation hearing was conducted by several John Doe Officials. Those Officials then determined that plaintiff should remain in segregation pending a Disciplinary Hearing.

54. At approximately 3:00pm on May 25,2001, defendant Davis approached plaintiff's segregation cell and introduced herself as the assigned Staff Advocate.

55. Plaintiff outlined his defense of inadequate security procedures during the strip-search which permitted the drugs to be placed under his lockerbox.

56. Plaintiff explained that the Officers who had been assigned to strip-searching inmates would demonstrate that there were no Officers assigned to monitor the inmates on Skidraw.

57. Plaintiff requested that defendant Davis obtain and examine the incident reports written by those officers.

58. Plaintiff further explained that the factual statement written by defendant Sapp was invalid because it lacked specific details about where the drugs were found, whether the drugs were in some type of container, and the amount found.

59. Plaintiff advised defendant Davis that the time of offense was incorrect because the K-9 unit had entered Dorm One at approximately 1:00pm and therefore the drugs must have been found well before 3:07pm as stated by the Report.

7.

## V. STATEMENT OF CLAIM (continued)

60. Plaintiff requested defendant Davis to obtain the drug tests he had taken to demonstrate none were positive.

61. Plaintiff requested defendant Davis to submit a request to the Disciplinary Hearing Officer for the opportunity to cross-examine defendant Sapp at the hearing.

62. Defendant Davis informed plaintiff that she was only required to be present during the hearing in order to ensure that plaintiff did not receive more time than others with the same offense.

63. Defendant Davis advised plaintiff that her job as Staff Advocate did not require her to assemble any documentary evidence, interview any witnesses or present his case.

64. Plaintiff suggested that defendant Davis should read the Standard Operating Procedures (S.O.P.) concerning the duties of a Staff Advocate.

65. Defendant Davis became extremely angry and exited isolsegs.

66. At approximately 9:00 am on May 28, 2001, defendant Sapp approached plaintiff's segregation cell.

67. Plaintiff asked defendant Sapp where exactly did she find the drugs.

68. Defendant Sapp informed plaintiff that she did not find the drugs.

69. Defendant Sapp stated that she had been instructed to write the Disciplinary Report.

70. At approximately 9:00 am on June 1, 2001, defendant Spires held a Disciplinary Hearing.

71. Plaintiff was not seen by a Staff Advocate at least four (4) hours prior to the hearing as is required by the S.O.P.

72. Plaintiff's only interview with a Staff Advocate was on May 25, 2001.

73. Plaintiff observed that defendant Boone was present in the hearing room when he entered on June 1, 2001.

8.

...

# V. STATEMENT OF CLAIM (continued)

74. Defendant Boone made no attempt to communicate with plaintiff when he entered the hearing room.

75. Defendant Spires immediately began the hearing by reading the factual statement written by defendant Sopp.

76. Defendant Spires then required plaintiff to give his plead.

77. Defendant Spires instructed plaintiff to make any statements in defense to the charge.

78. Plaintiff informed defendant Spires that he wanted to include in the record the fact that he had been denied the assistance of a Staff Advocate.

79. Plaintiff advised defendant Spires that defendant Davis had not seen him since her May 25, 2001, interview.

80. Plaintiff informed defendant Spires that no Staff Advocate had held the required meeting with him four hours prior to the hearing.

81. Defendant Boone then informed defendant Spires that she was the plaintiff's Staff Advocate.

82. Plaintiff protested that he had never spoken to defendant Boone nor had he even seen her prior to entering the hearing room.

83. Plaintiff informed defendant Spires that defendant Davis had introduced herself on May 25, 2001, as the assigned Staff Advocate.

84. Defendant Boone advised defendant Spires that defendant Davis had conducted the May 25, 2001, interview of plaintiff at her request.

85. Defendant Spires then instructed plaintiff to proceed with his case.

86. Plaintiff described the inadequate security measures exercised during the strip-search on May 22, 2001.

...

V. STATEMENT OF CLAIM (continued)

87. Plaintiff advised defendant Spires that he had requested the incident reports written by the officers who had conducted the strip-search because they were important to his defense.

88. Plaintiff challenged the validity of the factual statement that was written by defendant Sapp because it lacked specific details.

89. Plaintiff advised defendant Spires that the factual statement on his Disciplinary Report-# D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- and the factual statement on inmate Trevis Johnson's Disciplinary Report-# D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- provided the same location for where the drugs were found as being "under your lockerbox."

90. Plaintiff advised defendant Spires that in order for the factual statement to be valid it needed to specify whether two (2) separate amounts of the "green leafy substance" was found under both boxes.

91. Plaintiff advised defendant Spires that in order for the factual statement to be valid it needed to specify whether a separate and distinct amount of the "green leafy substance" was found on the floor under lockerbox 61, or in the runners under lockerbox 61, or attached by some means to the bottom of lockerbox 61.

92. Plaintiff informed defendant Spires that he was assigned to lockerbox 61 and that inmate Johnson's lockerbox 62 was directly on top of lockerbox 61.

93. Plaintiff then advised defendant Spires that in order for the factual statement to be valid it needed to specify whether a separate and distinct amount of the "green leafy substance" was found on top of lockerbox 61, which would have been directly under lockerbox 62, or in the runners under lockerbox 62, or attached by some means to the bottom of lockerbox 62.

10.

## V. STATEMENT OF CLAIM (continued)

94. Plaintiff informed defendant Spires that he had requested defendant Davis to request the opportunity to cross-examine defendant Sapp at the hearing.

95. Plaintiff informed defendant Spires that he had tested negative for drugs on May 23, 2001, and that none of his previous drug test had been positive.

96. Plaintiff informed defendant Spires that his bunkmate, Trevis Johnson's drug test was positive on May 22, 2001.

97. Defendant Spires did not allow plaintiff to examine the evidence used against him contained in the investigation summary submitted by defendant Wilson.

98. Defendant Spires issued a written disposition which did not adequately explain the evidence relied upon and the reasons for the decision.

99. Defendant Spires simply stated that plaintiff was guilty "Based on factual statement / Investigation Summary."

100. Plaintiff was sentenced to 14 days isolation, 90 days store and phone restriction and issuance of a warrant in addition to the 10 days previously spent in segregation and a $4.00 fine.

101. Plaintiff submitted an appeal to defendant Williams on June 14, 2001, asserting the violation of procedural rights codified in the regulation such as his right to a Staff Advocate, his right to call witnesses and present documentary evidence in his defense.

102. Plaintiff was transferred from Rivers State Prison on June 19, 2001, to Augusta State Medical Prison.

103. Defendant Williams denied plaintiff's appeal on June 19, 2001.

104. Plaintiff submitted an appeal to defendant John Doe on July 6, 2001.

105. Defendant John Doe denied plaintiff's appeal on August 27, 2001, even though he asserted the violation of procedural rights.

11.

## V. STATEMENT OF CLAIM (continued)

106. Defendant James Doctor, who is the Director of Facilities for the Department of Corrections, after learning of the inadequate security measures exercised during the May 22, 2001, incident and the procedural violations during the disciplinary process failed to remedy the wrong.

### FIRST CAUSE OF ACTION

107. The actions of defendants Lawrence, Simmons, and Densley stated in paragraphs 1 through 17 denied plaintiff's right to substantive due process of law in violation of the Fourteenth Amendment.

108. Defendants Lawrence, Simmons and Densley each was categorically obligated to protect plaintiff from unjustified intrusions on personal security by other inmates during the strip-search phase of the K-9 shakedown conducted on May 22, 2001.

109. Defendants Lawrence, Simmons, and Densley each breached their affirmative duty of reasonable care by failing to assign any correctional officers to monitor the activities of the inmates remaining on skidrow during the strip-search.

110. Defendants Lawrence, Simmons, and Densley breach of their affirmative duty resulted in the following damages to plaintiff: (a) falsely charged with possession of drugs; (b) placed in punitive segregation for 10 days; (c) denied procedural due process throughout the disciplinary process; (d) placed in disciplinary isolation for 14 days; (e) placed on 90 days phone and store restrictions; (f) issued a warrant; (g) fined $4.00; and (h) alienated from the emotional and financial support of family.

111. The breach of duty by defendants Lawrence, Simmons, and Densley constituted deliberate indifference of plaintiff's safety and either contributed to or proximately caused the described violations of procedural due process during the disciplinary process.

## V. STATEMENT OF CLAIM (Continued)

### SECOND CAUSE OF ACTION

112. The actions of defendants Sapp and E. Williams, stated in paragraphs 20 through 23, 33 through 35 and 66 through 69, in willfully refusing to follow Department of Corrections policies governing disciplinary reports, constituted deliberate indifference and contributed to and proximately caused the described violations of plaintiff's Fourteenth Amendment rights.

113. Defendant Sapp's failure to provide specific details critical to her finding of the drugs and her failure to provide the correct time the drugs were found constitutes inadequate notice and denied the plaintiff due process of law in violation of the Fourteenth Amendment.

114. Defendant E. Williams by verifying that the disciplinary report was accurate and complete, even though aware that defendant Sapp neither participated in the K-9 search nor actually found the drugs further denied plaintiff adequate notice in violation of due process of law under the Fourteenth Amendment.

### THIRD CAUSE OF ACTION

115. The actions of defendant Wilson, stated in paragraphs 38 through 52, in willfully refusing to follow Department of Corrections policies governing investigation of disciplinary reports, constituted deliberate indifference and contributed to and proximately caused the described violations of plaintiff's Fourteenth Amendment rights.

116. Defendant Wilson's refusal to identify, locate, interview and place on plaintiff's witness list defendant Sapp, Officer Day and the correctional officers who participated in the strip and K-9 search and her refusal to check prison logs for the relevant information denied plaintiff due process of law in violation of the Fourteenth Amendment.

13.

V. STATEMENT   OF   CLAIM (continued)

117. Defendant Wilson's refusal to identify, locate, interview, obtain eye-witness statements and testimony summaries from all witnesses involved, upon plaintiff's specific request, not only violated Department of Corrections policy but also denied plaintiff's due process right to have reasonable access to information necessary to prepare a defense in violation of the Fourteenth Amendment.

FOURTH   CAUSE   OF   ACTION

118. The actions of defendants Davis and Boone, stated in paragraphs 54 through 65 and 71 through 100, in willfully refusing to follow Department of Corrections policies governing duties of Staff Advocate, constituted deliberate indifference and contributed to and proximately caused the described violations of plaintiff's Fourteenth Amendment rights.

119. The refusal of defendants Davis and Boone to interview, obtain eyewitness statements and testimony summaries from the officers who participated in the strip and K-9 search, their refusal to obtain requested documentary evidence and their refusal to assist prepare or present the defense denied plaintiff due process of law in violation of the Fourteenth Amendment.

FIFTH   CAUSE   OF   ACTION

120. The actions of defendant Spires, stated in paragraphs 20 through 100, in willfully refusing; to call the witnesses requested by the plaintiff; to allow plaintiff to examine the evidence against him in the investigation summary; to provide plaintiff on adequate written disposition of the charges; finding him guilty of possession of unauthorized drugs with no evidence to support the charge; and to allow plaintiff to present documentary evidence denied plaintiff due process of law in violation of the Fourteenth Amendment.

14.

V. STATEMENT OF CLAIM (continued)

SIXTH CAUSE OF ACTION

121. The actions of defendants T. Williams and John Doe, stated in paragraph 101 through 105, in refusing to overturn plaintiff's disciplinary conviction, despite their knowledge of the above -- described due process violations, constituted deliberate indifference and further denied plaintiff due process of law in violation of the Fourteenth Amendment.

122. The actions of defendant Doctor, stated in paragraph 106, in refusing to remedy the wrongs, despite being made aware of the incident through S.O.P. II A04-0002 VI. A(1)(a) and being made aware of the disciplinary proceedings through S.O.P. II B02-0002 VI. A(8) and various other routine reports, constituted deliberate indifference and further denied plaintiff due process of law in violation of the Fourteenth Amendment.


II. List the name and address of every person you believe was a witness to the incidents you complain about, briefly stating what you believe each person knows from having seen or heard what happened.

John Doe, Dorm Officer on Dorm One, first shift on May 22, 2001, at Rivers State Prison, P.O. Box 1500, Hardwick, Ga., should know the exact time that defendants Lawrence, Simmons and Bensley entered Dorm One. This Officer should be able to establish that the defendants entered the dorm alone. This Officer should know the exact time that the additional correctional officers entered Dorm One and the exact number which entered the dorm. This Officer should should know exactly where the additional correctional officers were positioned.

15.

## V. STATEMENT   OF   CLAIM (continued)

11. List the name and address of every person you believe was a witness to the incident.....

Officer Day and the other John Doe Officers who participated in the strip and K-9 search, Rivers State Prison, P.O. Box 1500, Hardwick, Ga., should be able to establish that it was defendants Lawrence's, Simmons', and Densley's intention and plan to conduct the shake down in a covert manner in order to catch the inmates by surprise.

Officer Day and the other John Doe Officers should be able to establish that they had been instructed to remain out of sight until called. Each of these officers should be able to establish what their duties were to be during the strip search and which defendant assigned those duties during the planning of the shake down. Each of these Officers should be able to establish that the use and possession of illicit drugs was pervasive at Rivers.

12. Briefly state exactly what you want the Court to do for you.....

3. Defendant Eddie Williams' actions in verifying a disciplinary report written by an officer he knew had no personal knowledge of the facts or involvement violated plaintiff's rights under the Fourteenth Amendment;

4. Defendants Wilson's, Davis' and Boone's actions in denying access to information necessary for the preparation of a defense violated plaintiff's rights under the Fourteenth Amendment; and

5. Defendant Spires' actions in conducting a disciplinary hearing devoid of any procedural safeguards and defendants Thalrone Williams', John Doe's and Dactor's actions in sustaining such a procedurally defective hearing violated plaintiff's rights under the Fourteenth Amendment.

16.

V. STATEMENT   OF   CLAIM (continued)

12. Briefly state exactly what you want the court to do for you.....

B. Issue an injunction ordering defendants Tholone Williams and Doctor to:
   1. Establish a testing regimen on a regular basis for those correctional staff whose duties are related to the disciplinary process; specifically but not limited to, the disciplinary report investigator, staff advocate, and disciplinary hearing officer; and
   2. Expunge the disciplinary conviction described in this complaint from the plaintiff's institutional record and return the $4.00 fine.

C. Award compensatory damages, jointly and severally in an amount and character to be proven at trial against each defendant named herein for:
   1. 10 days spent in conditions of punitive segregation where plaintiff suffered (a) the deprivation of those privileges [ie., retention of all personal property] normally afforded inmates placed in segregation without benefit of due process; (b) the humiliation and emotional distress of being falsely accused of drug possession; and (c) the mental anguish over the effect such a serious charge would have on parole consideration; and
   2. 14 days spent in disciplinary isolation where plaintiff suffered unjustified punishment, mental and emotional distress and was subsequently alienated from the emotional and financial support of family resulting from the denial of due process in connection with the disciplinary proceedings.

D. Award punitive damages against each of the defendants named herein in an amount and character to be proven at trial.

E. Grant such other relief as it may appear that plaintiff is entitled.

12.

11.  List the name and address of every person you believe as a witness to the incident(s) you complain about, BRIEFLY stating what you believe each person knows from having seen or heard what happened.  (USE ADDITIONAL SHEETS, IF NECESSAR* *(See, Attachments pg. 15-16)*

John Doe, Building Control North Officer, first shift on May 22, 2001 at Rivers State Prison P.O. Box 1500, Hardwick, Ga. should know the exact time that defendants Lawrence, Simmons and Densley entered Dorm One. This Officer should know the exact time the additional officers entered Dorm One and the exact time the K-9 unit entered the North Building and Dorm One.

12.  BRIEFLY state exactly what you want the court to do for you.  That is, what kind of relief are you seeking in this lawsuit?  Do not make any legal arguments and do not cite any cases or statutes!  (USE ADDITIONAL SHEETS, IF NECESSARY) *(See, Attachment-pg. 16-17)*

A. Issue a declaratory judgment stating that:

  1. Defendants Lawrence's, Simmons', and Densley's actions in failing to provide adequate security during the strip search violated plaintiff's rights to be protected from the activities of other inmates under the Fourteenth Amendment;

  2. Defendant Sapp's actions in writing a disciplinary report which she had no personal knowledge of the facts nor any involvement with the incident violated plaintiff's rights under the Fourteenth Amendment;

13.  You may attach additional pages if you wish to make any legal argument.  However, legal arguments are NOT required in order for you to obtain relief under §1983.  If the court desires legal argument from you, it will request it.  If any defendant presents a legal argument, you <u>will</u> be afforded an opportunity to respond thereto.

14.  KEEP IN MIND THAT ONCE YOUR LAWSUIT IS FILED, THE COURT WILL REQUIRE YOU TO <u>DILIGENTLY</u> PROSECUTE IT.  That means that you will be required to go forward with your case without delay.  Thus, if you fail to adequately prepare your case <u>before</u> you file it, you may find your lawsuit dismissed for failure to prosecute if you take no action once it is filed.  YOU WILL RECEIVE NO FURTHER INSTRUCTIONS FROM THE COURT TELLING YOU WHAT TO DO OR HOW TO DO IT!  IT IS YOUR RESPONSIBILITY AND YOURS ALONE TO PROSECUTE YOUR OWN CASE!  If you fail to prosecute your case, it will be dismissed under Rule 41 of the *Federal Rules of Civil Procedure.*

Signed this _29th_ day of _APRIL_ , 2003.

_Sloan, Herbert Earl_
**PLAINTIFF**